IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>BROOKE C. ANDERSON,<br><br>                    Defendant. | **4:13CR3085**<br><br>**FINDINGS, RECOMMENDATION<br>AND ORDER** |

The defendant has moved to suppress statements made following her arrest and during transport from Omaha to Lincoln.  (Filing No. 18).  The defendant claims the transporting officers "engaged in conversations" with her which "ultimately led to incriminating statements being made," that she was not advised of her Miranda rights before making those statements, and that her incriminating statements must be suppressed under the Fifth Amendment.  (Filing No. 18).  An evidentiary hearing was held on August 26, 2013.  After considering the evidence and the parties' arguments, the court finds the motion to suppress should be denied.


STATEMENT OF FACTS


On May 17, 2013, a petition was filed alleging Rashad J. Lee had violated the terms of his supervised release.  (4:10CR3128, Filing No. 50).  The court issued a warrant for Lee's arrest.  (4:10CR3128, Filing No. 51).


The federal deputy marshals believed Lee was living in the defendant's home.  On May 20, 2013, at least three to four deputy marshals, along with other fugitive task force members, including Deputy Marshal Grant Quinn, went to the defendant's home in search of Lee.  With the defendant's consent, the task force performed a room-to-room search of the defendant's home.  Lee was not present.

A two-count indictment was filed against Anderson on June 19, 2013, charging her with harboring Lee and lying to federal officers to conceal Lee's presence in the defendant's home.  The indictment alleges that on May 22, 2013, the date of Lee's arrest, the defendant told officers that she had not seen Lee for two weeks when, in fact, Lee was present in her home when this statement was made.  (Filing No. 1).

The defendant was arrested in Omaha on June 24, 2013, and was scheduled to appear before the undersigned magistrate judge in Lincoln, Nebraska on June 27, 2013.

At around 9:00 a.m. on June 25, 2013, Deputy Quinn and Deputy Marshal William Bitting arrived at the cell block in the Omaha federal building to pick up the defendant and transport her to Lincoln.  The defendant was not under the influence of drugs or alcohol, was aware of her surroundings, and communicated in English.  The officers were aware the defendant had been indicted, and that the indictment had something to do with harboring a fugitive and being dishonest when communicating with law enforcement.  But neither Quinn nor Bitting had seen or reviewed any paperwork describing the defendant's charges.   Since the defendant had self-surrendered, they believed she was represented by counsel.

The defendant was restrained and placed in the rear seat of an unmarked Chevy Impala used by the Marshal for transporting defendants and offenders.   Two sheets of Plexiglass, with a wire mesh opening in the middle, had been installed in the vehicle to separate the front and rear seating areas.  The mesh permitted officers to hear and respond to a defendant's requests during transport.

Quinn drove the transport vehicle; Bitting sat in the passenger front seat with the defendant seated directly behind him.  Shortly after the trip to Lincoln began (somewhere

between the 42nd Street and 72nd Street exits on Interstate 80), the defendant asked if she could ask a personal question. Quinn responded that he did not answer personal questions. Bitting asked her to explain what she meant by a personal question. The defendant asked what the likelihood was that she would be released on bond. Quinn stated she would need to speak with pretrial services and her lawyer, and explained the court would consider whether she may flee or pose a risk of harm to the public if released. Quinn said nothing more to the defendant for the remainder of the trip.

The defendant talked nearly nonstop during the one hour trip to Lincoln. She needed to speak loud to be heard through the mesh, but she did not appear upset or scared, and she was not disrespectful. She was anxious about being released, asked a lot of questions about bond, and stated she could provide information about the location of several drug houses if providing that information would help her get released.

The defendant mentioned that she had self-surrendered. Bitting responded that self-surrender would go in her favor when requesting release. The defendant also explained she had been in trouble in the past, but was now on diversion and was trying to stay out of trouble. Bitting sarcastically stated that one way to stay out of trouble is to not lie to the police. The defendant responded with an incriminating statement; specifically, she explained that she lied about Lee because she was afraid of him, commenting that if the officer knew Lee, he would understand. Bitting advised that she should have simply nodded "yes" when the officers came to her door, and used her finger to point to Lee's location. The defendant acknowledged that she should have done that.

The defendant had not been advised of her Miranda rights before making her statements in the vehicle. Bitting realized the defendant's statements were incriminating when he heard them, but he did not intend to elicit such statements during the conversation. Bitting and the defendant never discussed the search of the defendant's

3

residence, Lee's arrest, or the statements made by the defendant on the date of Lee's arrest.

ANALYSIS

Because Anderson was obviously in custody at the time she made incriminating statements, the court must determine whether she was subjected to an interrogation without the benefit of receiving the Miranda warnings.

Miranda warnings are required when an individual has been subjected to a "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). The warnings are necessary "to dispel the compulsion inherent in custodial surroundings." Id. at 444. For the purposes of the Miranda warnings "interrogation" refers to "questioning initiated by law enforcement officers." Id. at 444. This definition was later enlarged to include "words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response" – the "functional equivalent" of questioning. Rhode Island v. Innis, 446 U.S. 291, 302-03 (1980) (emphasis in original). That is, "police . . . cannot be held accountable for the unforeseeable results of their words or actions. . . ." Id. at 301-02. "Whether a particular statement constitutes an interrogation depends upon the circumstances of each case, but we generally do not find a mere factual statement to be an interrogation where it serves to inform the suspect as to the status of his case or the investigation into his activities." United States v. Hull, 419 F.3d 762, 767 (8th Cir. 2005).

A police officer's "mere description of evidence and of the potential charges against a suspect" is not the functional equivalent of an interrogation. See United States v. Wipf, 397 F.3d 677, 685 (8th Cir. 2005)(quoting United States v. Conley, 156 F.3d 78, 83 (1st Cir. 1998)). In Wipf, the defendant, while in custody, requested an attorney. Before allowing Wipf access to a lawyer, the police officer advised Wipf that he wanted

to "tell him the situation and explain the charges against him." Id. at 681. After informing Wipf that he had been arrested for possession of child pornography based on evidence that had been seized from Wipf's home, Wipf responded "you got me" or "you caught me." Id. The court determined that the officer's recitation of the charges and evidence did not constitute direct questioning or the functional equivalent thereof. Id. at 685.

According to Anderson, Bitting interrogated her when he stated that not lying to police officers was one way to stay out of trouble and when he explained how she could have secretly and truthfully responded to police inquiries. Anderson claims Bitting's statements, although not framed as a question, were the functional equivalent of interrogation. The court disagrees.

Although perhaps ill-advised, the officer's statements were not reasonably likely to illicit an incriminating response. Bitting's "off-hand" comment came in the context of a conversation initiated by Anderson regarding her chance of pre-trial release. Anderson offered that she was now trying to stay out of trouble, and Bitting merely responded to Anderson's freely offered and spontaneous statement – a factor that weighs against finding that Bitting's statement was tantamount to an interrogation. See, e.g., United States v. Chipps, 410 F.3d 438, 446 (8th Cir. 2005)(finding an officer's question of clarification to a suspect's spontaneous statement was for clarification and was not intended to elicit an incriminating response). Further, there is no evidence to suggest Anderson was "unusually disoriented or upset" during the conversation. See Innis, 446 U.S. at 303. To the contrary, she was conversing with the officers freely for the entire trip from Omaha to Lincoln.

The statement made by Bitting was more akin to a recitation of charge against her – a mere factual statement representing why Anderson had been arrested and was not a

"plea to the conscience, and it was not accompanied by any threats or other coercive pressure." Chipps, 410 F.3d at 445.   In essence, Biting was repeating to Anderson the reason for her arrest – lying to law enforcement officials – something the Eighth Circuit has determined will usually not constitute an interrogation.  See Wipf, 397 F.3d at 685. Accordingly, Anderson's motion to suppress should be denied.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by, Brooke Anderson, (Filing No. 18), be denied in all respects.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS FURTHER ORDERED, the trial of this case is set to commence before the Honorable Richard G. Kopf at 9:00 a.m. on October 28, 2013, or as soon thereafter as the case may be called, for a duration of three (3) trial days, in Courtroom 1, United States Courthouse, Lincoln, Nebraska.  Jury selection will be held at commencement of trial.

September 26, 2013

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.